919 So.2d 750 (2005)
STATE of Louisiana
v.
Derrick MAZIQUE.
No. 05-KA-278.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 2005.
*751 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, Edgard, Louisiana, for Plaintiff/Appellee.
Prentice L. White, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY, and JAMES C. GULOTTA, Pro Tempore.
JAMES L. CANNELLA, Judge.
The Defendant, Derrick Mazique, appeals from his conviction of being a principal to distribution of cocaine and sentence of eight years at hard labor, two years without benefit of parole, probation or suspension of sentence. We affirm.
The Defendant was convicted and charged by a jury on August 24, 2004 and on November 15, 2004, he was sentenced.[1]
On March 7, 2002, Agents Ty Patin and Jeff Zettlemoyer were working undercover for the St. John the Baptist Sheriff's Office, purchasing small amounts of narcotics from street level dealers in high crime areas. At approximately 4:24 p.m., they came in contact with the Defendant at the Kart-N-Carry convenience store located in Reserve, Louisiana at the intersection of East 13th Street and River Road. Agent Patin was driving and testified that the Defendant approached the passenger side of the vehicle and asked what they needed. Agent Patin responded that he was "looking for a fifty", which is street slang for $50 worth of crack cocaine. According to Agents Patin and Zettlemoyer, the Defendant indicated he did not have any cocaine but that he could get it. The Defendant wanted the money in advance and the parties haggled over how much the Defendant would get paid for his services in setting up the sale. The agents ultimately paid the Defendant $10, and the Defendant went down the street and met with another person, later identified as Terrance Jacob (Jacob), who was on a four-wheeler.
*752 Agent Patin observed the Defendant and Jacob talking and pointing in his direction. Shortly after, Jacob drove up to the two agents and asked what they were looking for. Agent Patin replied by asking Jacob if the Defendant had given him the $10. Jacob said "no". Agent Patin then told Jacob that he "need[ed] a forty" as opposed to "a fifty." Jacob instructed the agents to meet him on the next street. The agents complied, at which time Jacob sold Agent Patin $40 worth of cocaine.[2] The entire transaction, including the initial conversation with the Defendant, was recorded by surveillance equipment located within the agents' vehicle.
Jacob testified at trial and denied that the Defendant worked for him as his "drug agent." He admitted selling cocaine to the undercover agents on March 7, 2002, but denied speaking to the Defendant on that day. Jacob specifically denied that the Defendant informed him that the undercover agents wanted to purchase cocaine from him.
On appeal, the Defendant contends that the evidence was insufficient to support his conviction for being a principal to distribution of cocaine, a violation of La. R.S. 14:24 and 40:967. The Defendant argues that his actions made him guilty only of tricking the undercover agents and scamming them out of money. He asserts he did not have any drugs on his person, did not sell the drugs to the undercover agents, did not introduce the undercover agents to the dealer, did not accompany the agents during the transaction, and did not talk to the dealer before the dealer sold the drugs to the agents. Based on these facts, the Defendant contends that his action of taking money from the agents does not make him guilty of being a principal to distribution of cocaine.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Bailey, 04-85, p. 4 (La.App. 5th Cir.5/26/04), 875 So.2d 949, 954-955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476.
La.R.S. 40:967(A)(1) provides that it is unlawful for any person to knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II. Cocaine is classified in Schedule II as a controlled substance. La. R.S. 40:964(A)(4). The definition of "distribute" is "to deliver a controlled dangerous substance... by physical delivery." La. R.S. 40:961(14). "Delivery" has been jurisprudentially defined as transferring possession or control. State v. Staggers, 03-655, p. 5 (La.App. 5th Cir.10/28/03), 860 So.2d 174, 177.
A defendant may be guilty of distribution as a principal if he "aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance such as cocaine." State v. Bartley, 00-1370, p. 5 (La.App. 5th Cir.2/14/01), 782 So.2d 29, 32-33, writ denied, 01-717 (La.2/22/02), 809 So.2d 981. Thus, an intermediary who arranges or facilitates the transfer of narcotics from the seller to the buyer may by charged and punished as a principal in the act of distribution. State v. Celestine, 95-1393, p. 3 (La.1/26/96), 671 So.2d 896, 897; State v. Brown, 05-102, p. 3 (La.App. 5th Cir.5/31/05), 904 So.2d 805, 808. To support a defendant's conviction as a principal, *753 the state must show that the defendant had the requisite mental state for the crime. Distribution of cocaine is a general intent crime that can be established simply by proving voluntary distribution. State v. Banks, 307 So.2d 594, 597 (La.1975); Brown, 05-102 at p. 3, 904 So.2d at 808.
The Defendant relies on State v. Magee, 00-2816 (La.App. 1st Cir.10/10/01), 809 So.2d 452, in support of his position that his actions were insufficient to make him a principal to distribution. Defendant cites Magee for the proposition that merely directing or recommending a source does not make one a principal to distribution of a controlled substance.
In Magee, an undercover agent approached the defendant in an attempt to purchase drugs. The defendant told the undercover agent to drive to a nearby store. The agent indicated that she had already made a purchase from someone at the store and asked if she could just circle the block a few times. The defendant agreed. After she circled the block twice, the defendant "flagged" the undercover agent to another man who was down the street. The man approached the agent's vehicle and handed her cocaine in exchange for money.
The First Circuit concluded there was insufficient evidence to convict the defendant of being a principal to the distribution of cocaine. The court relied on the fact the defendant did not initiate the transaction, he did not introduce the buyer to the seller, he was not present when the transaction occurred, he was not observed in any association with the seller (either before or after the transaction), and there was no evidence that he shared in the proceeds of the sale. The court explained that it is the defendant's degree of involvement with the seller and/or the ultimate transaction that determines his criminality. The court distinguished the defendant's actions from the action of defendants in other cases where the evidence was found to be sufficient to uphold a conviction for distribution under the doctrine of principal liability, including State v. McGee, 98-2116 (La.App. 4th Cir.2/23/00), 757 So.2d 50, writ denied, 00-0877 (La.10/27/00), 772 So.2d 121, cert. denied, 535 U.S. 969, 122 S.Ct. 1435, 152 L.Ed.2d 379 (2002).
In McGee, the defendant approached the undercover officer's vehicle and the officer asked the defendant where she could get "a twenty." The defendant said "yes," and instructed the officer to pull her vehicle to the side. The defendant then walked over to two other men who were standing nearby and engaged in a short conversation. Thereafter, one of the two men approached the officer's vehicle and sold her a rock of crack cocaine. Relying on the defendant's action in approaching the officer and his observed conversation with the actual seller who then immediately sold the drugs to the officer, the McGee court found sufficient evidence for attempted distribution as a principal.
The present case is more factually similar to McGee rather than Magee. Like McGee, the Defendant here made the initial contact with the undercover agents by approaching their vehicle, indicating that he knew where to get cocaine by asking "what they needed." He negotiated a fee for setting up the transaction and was observed talking to the actual seller minutes prior to the transaction. Although the Defendant argues that he did not talk to Jacob prior to the transaction, Agents Patin and Zettlemoyer both testified that they observed the Defendant leave their vehicle, approach Jacob, who was located further down the street, and talk to him. Immediately after, Jacob approached the agents and made the sale.
*754 The Defendant's actions here constituted more than merely directing the undercover agents to a source. His intent to distribute cocaine was manifested by his actions. He approached the undercover agents indicating that he could get cocaine. He negotiated a fee for his services. Furthermore, he was seen talking to the actual seller immediately prior to the transaction. Although Jacob testified that he did not talk to the Defendant on the day of the sale, the jury apparently did not believe him. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56; Bailey, 04-85 at p. 5, 875 So.2d at 955.
Viewing the evidence in a light most favorable to the prosecution in this case, we find that the Defendant acted as an intermediary to facilitate transfer of cocaine to a buyer and, therefore, was a principal in the distribution of that cocaine.[3] Thus, the evidence was sufficient to convict the Defendant of the offense.[4]
Accordingly, we hereby affirm the Defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] At the time of sentencing, the State indicated it would file a habitual offender bill of information. It was filed on March 10, 2005 and was set for a hearing on August 15, 2005.
[2] The parties stipulated at trial that the substance Jacob sold to Agent Patin was cocaine.
[3] See also, State v. Rexrode, 536 So.2d 671 (La.App. 3rd Cir.1988), and State v. Cook, 460 So.2d 1075 (La.App. 2nd Cir.1984), writ denied, 466 So.2d 465 (La.1985), which upheld the defendants' convictions for distribution under the theory of principal liability.

In Rexrode, the defendant was convicted of being a principal to the distribution of marijuana. The undercover officer asked the defendant if he had narcotics for sale and the defendant stated that he did not. However, the defendant instructed his roommate to inquire about the availability of marijuana at a nearby lounge. His roommate did so and produced a willing seller with whom the transaction was completed.
In Cook, the Second Circuit found sufficient evidence to uphold the defendant's conviction for being a principal to distribution of marijuana. There, the defendant told the undercover officer to drive one block to a street corner where a black male would be waiting. The defendant told the officer to hand the man money and the man would hand him a bag of marijuana. The officer followed the defendant's instructions and completed the transaction.
[4] At the sentencing hearing, the trial judge only stated that the Defendant had two years in which to file for post-conviction relief. However, the court provided the Defendant with written notification of the specific provisions of La.C.Cr.P. art. 930.8, the prescriptive period for post-conviction relief, and both the Defendant and his attorney signed the written notification. Since the Defendant received written notice at the time of sentencing of the specific provisions, the trial judge was in compliance with the statute.